Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| FELIPE LANDRAU CABEZUDO ET AL<br><br>Recurrida<br><br>V.<br><br>AUTORIDAD DE LOS PUERTOS DE PUERTO RICO Y OTROS<br><br>Peticionario | KLCE202300810 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>K PE2017-1199 (908)<br><br>Sobre:<br>IGUAL PAGA POR IGUAL TRABAJO |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de octubre de 2023.

La peticionaria, Autoridad de los Puertos, solicita que revisemos la denegatoria del Tribunal de Primera Instancia a desestimar sumariamente la demanda porque la controversia es cosa juzgada.

Los hechos esenciales para comprender la determinación que hoy tomamos se incluyen a continuación.

### I

Los empleados de la Autoridad de Puertos están agrupados en dos uniones distintas. Estas uniones son la hermandad de Empleados de Oficina, Comercio y Ramas Anexas (HEO o hermandad) y la Unión de Empleados de Muelles (UDED). La UDED no tiene auxiliares de agrimensores entre sus unionados. Los recurridos trabajan como auxiliares de agrimensores en la Autoridad y pertenecen a la Hermandad. Durante el año 1996, la Hermandad negoció con la Autoridad que los miembros de su matrícula en puestos con tareas similares a los unionados de la UDED tendrían paridad salarial. No obstante, los auxiliares de agrimensores no fueron incluidos en el acuerdo, porque la UDED no tiene unionados en ese puesto. Sin

embargo, ocasionó que empleados en otros puestos, con tareas menos complejas, con menor preparación académica y a los que no se les exige una licencia, tengan un ingreso mayor al que reciben los auxiliares de agrimensura.

La Hermandad negoció un nuevo convenio colectivo con la Autoridad en el año 2012, en el cual el Artículo de Retribución y Clasificación no sufrió ningún tipo de cambio y fue ratificado por la matrícula de la unión.

Durante el año 2013, la Hermandad pidió a la Autoridad que reclasificara el puesto de auxiliar de agrimensores. La Autoridad lo reclasificó en la Escala 8. La Hermandad pidió reconsideración, porque los auxiliares de agrimensores debían estar en una escala más alta. Según la Hermandad, los auxiliares de agrimensores debían estar en la misma escala salarial que el resto de los puestos descritos como auxiliares. La Autoridad denegó la reconsideración por tardía.

La Hermandad acudió al proceso de arbitraje. El árbitro redujo la controversia a determinar, si la Autoridad reasignó los puestos de auxiliares de agrimensores conforme a los Artículos XII y XIII del Convenio Colectivo. El árbitro concluyó que la Hermandad no demostró que la Autoridad violó el convenio colectivo, ni incumplió con el procedimiento para la reasignación de puestos. El 17 de octubre de 2016 ordenó el cierre con perjuicio y archivó el caso.

El 27 de abril de 2017, los recurridos demandaron a la Autoridad y a la Hermandad porque las escalas salariares negociadas en el convenio colectivo violentaron el derecho de los auxiliares de agrimensores a recibir igual paga por igual trabajo.

La demanda incluyó las alegaciones siguientes. Los demandantes trabajan en la Autoridad como Auxiliares de Agrimensores y pertenecen a la Hermandad. La Autoridad y la Hermandad negociaron un convenio que ubica a los auxiliares de agrimensores en una escala salarial inferior a la de otros auxiliares. La negociación es injusta porque a los

auxiliares de agrimensores se les exige una preparación académica superior y realizan igual o más trabajo. Los auxiliares de otros puestos tienen un salario de $1,888.25 o más mensuales, mientras que los auxiliares de agrimensura solo reciben $1,200.00 mensuales.[1] La Hermandad incumplió con su deber de representación, porque negoció convenios en los que se discrimina contra los auxiliares de agrimensores. La Autoridad ha sido negligente, porque no ha revisado ni aplicado el plan de retribución, de manera que corrija esa disparidad salarial. La actuación de la Autoridad ha quebrantado el derecho constitucional de los recurridos a recibir igual paga por igual trabajo. Los demandantes tienen derecho a recibir el pago de los salarios dejados de recibir por el tiempo de la disparidad y una indemnización por daños y perjuicios.[2]

La Autoridad solicitó la desestimación de la demanda porque la controversia es cosa juzgada. La Hermandad hizo lo propio. Ambas adujeron que la controversia fue adjudicada en el laudo de arbitraje emitido por el Negociado de Arbitraje el 16 de octubre de 2016.

El TPI realizó una vista argumentativa y concluyó que no existente identidad entre las controversias del proceso de arbitraje y la de este caso. Según el TPI, la controversia en el proceso de arbitraje se circunscribió a los Artículos XII y XIII del Convenio Colectivo y a la reasignación de puestos. No obstante, entendió que la controversia ante su consideración era distinta, porque los demandantes cuestionaban la constitucionalidad del Artículo XX del Convenio Colectivo relacionados a la compensación.

El foro primario concluyó que la controversia tampoco era arbitrable, porque el Artículo XLII del convenio limita el arbitraje a reclamaciones relacionadas a la interpretación, aplicación,

---

[1] Página 844.
[2] *Íd.*

administración o alegada violación del convenio.[3] Por otro lado, resolvió que la reclamación no estaba prescrita, porque los daños alegados son de naturaleza continua. Según el TPI, la violación persiste ininterrumpidamente, cada vez que el patrono hace el pago.

Al TPI le quedó claro que los demandantes tienen derecho a cuestionar judicialmente las acciones discriminatorias incluidas en el convenio colectivo. Fue enfático en que los obreros pueden cuestionar un convenio colectivo, cuando la unión actuó de forma arbitraria, discriminatoria o de mala fe. Además, advirtió que una demanda con esas alegaciones no está sujeta al arbitraje. El TPI reconoció que no existe justificación para la marcada diferencia salarial existente entre los Auxiliares de Agrimensores y el resto de los auxiliares. El tribunal hizo hincapié en que los deberes de los Auxiliares de Agrimensura son de mayor responsabilidad y a que se les requiere mayor preparación académica y una licencia. No obstante, descartó que la diferencia salarial obedezca a la negociación de paridad salarial, porque ese acuerdo fue en el año 1996 y venció en el año 2001. Además de que no incluyó el Exhibit A, en el que se establece que los empleados de menor jerarquía reciben un salario sustancialmente superior a otros de mayor jerarquía. El TPI concluyó que esa disparidad violentó el propósito del plan de clasificación del convenio, de agrupar verticalmente las clases con características similares y de aplicarles la misma escala de salarial.

El 31 de julio de 2018, el TPI se negó a desestimar sumariamente la demanda porque está en controversia:

(1) si la Autoridad veló por mantener actualizado el Plan de Clasificación de Puestos. Artículo XX, Sección 4.

(2) si la unión incumplió su deber de representación, porque negoció un convenio con condiciones de trabajo inferiores para un grupo de empleados.

---

[3] Página 738.

La peticionaria acudió al Tribunal de Apelaciones en el KLCE201801310 y este tribunal denegó la expedición del recurso.[4]

Las partes presentaron el Informe de Conferencia con Antelación al Juicio, en la que estipularon una gran cantidad de hechos.

El 4 de noviembre de 2022, la peticionaria presentó otra solicitud de sentencia sumaria. La Autoridad alegó nuevamente que la controversia se resolvió en el laudo de arbitraje e invocó por segunda ocasión las doctrinas de impedimento colateral y cosa juzgada.

Por otro lado, la Autoridad adujo que los recurridos no pueden cuestionar el convenio, porque fue negociado por su representante sindical. Además, alegó que la causa de acción de los demandantes prescribió, debido a que se presentó vencido el término de un año. El patrono adujo que ese término comenzó a partir del último convenio colectivo otorgado en el año 2012 y la demanda se presentó tardíamente en el año 2017.

Por último, adujo que los recurridos no podían reclamar igual paga por igual trabajo, porque las tareas de los auxiliares de agrimensura no son iguales a las de los otros auxiliares con los que pretenden compararse.

Los recurridos alegaron que la doctrina de cosa juzgada no aplica, porque la controversia es distinta, debido a que aquí impugnan las escalas del convenio colectivo porque son inconstitucionales. Invocaron su derecho a cuestionar el convenio, debido a que la Hermandad incumplió con su deber de justa representación. Los recurridos adujeron que la Hermandad negoció unas escalas arbitrarias y discriminatorias para los Auxiliares de Agrimensores.

Según los recurridos, la reclamación no está prescrita, porque los daños que alegan son de naturaleza continua y el convenio tiene una cláusula de renovación automática.

---

[4] Página 800.

La parte recurrida argumentó que la reclamación de igual paga por igual trabajo contra la Autoridad, procede en su modalidad de aplicación equitativa de plan de clasificación y retribución, según lo resuelto en *Rivera Padilla v. OAT,* 189 DPR 315 (2013). Por último, alegan que la Solicitud de Sentencia sumaria está basada en los mismos argumentos que las mociones dispositivas que el tribunal ya declaró NO HA LUGAR.

El TPI denegó la solicitud de sentencia sumaria, debido a la existencia de hechos esenciales en controversia.

No obstante, determinó que no existe controversia sobre los hechos siguientes. La Autoridad y la Hermandad suscribieron los convenios colectivos de los años 1993, 1996, 2000 y 2012 en los que se establece que los puestos de la unidad apropiada representada por la Hermandad se administrarán mediante el plan de clasificación. El término puesto se define en el convenio como el conjunto de deberes y responsabilidades asignadas o delegadas por una autoridad competente que requiere el empleo de una persona durante su jornada parcial o completa. El convenio define el término clase de puesto como el grupo de puestos suficientemente similares en cuanto a sus deberes y responsabilidades como para que se le pueda designar con el mismo título descriptivo, requiere sustancialmente los mismos requisitos a los aspirantes a ocupar los puestos asignados a la clase, administrar la misma prueba o examen para el reclutamiento de candidatos y aplicar la misma escala de salarios bajo las mismas normas.[5]

Otros hechos que el TPI determinó probados son los siguientes. El plan de clasificación agrupa los puestos en Grupos Operacionales y/o escalas retributivas para asignar cada clase de puesto a una escala salarial. A principios de octubre de 1996, la clase de Auxiliares de Agrimensura estaba asignada al grupo ocupacional 6 y escala 6 de

---

[5] Determinaciones de hecho 1 a 4.

retribución. A esa fecha, la unidad apropiada era representada por la Hermandad. A principio del 1996, la Hermandad y la Unión de Empleados de Muelles representaban algunos trabajadores que ostentaban puestos asignados a clasificaciones iguales o similares. El 15 de octubre de 1996, la Autoridad y la Hermandad estipularon un aumento salarial adicional al incluido en el párrafo tercero A del convenio. El aumento se concedió para lograr la paridad salarial entre los empleados que realizan las mismas tareas en un plazo no menor de 5 años y a partir del 1 de octubre de 1996. La Hermandad era la representante exclusiva de los Auxiliares de Agrimensura. La Unión de empleados no tenía clasificaciones similares o iguales a la de los Auxiliares de Agrimensura. Por esa razón, los Auxiliares de Agrimensura fueron excluidos de ese aumento. Durante el año 2002, los auxiliares de agrimensura fueron reasignados de la escala salarial 6 a la escala salarial 7, por orden de una sentencia del Tribunal de Apelaciones.[6]

La resolución recurrida también incluye hechos siguientes. Landrau Correa comenzó a trabajar en la Autoridad en el año 2003 como Auxiliar de Agrimensura. El 14 de noviembre de 2005, el Director Ejecutivo de la Autoridad suscribió un memorando informando que alcanzó un acuerdo con la Unión para realizar un estudio de retribución y clasificación. El 28 de enero de 2013, varios empleados en el puesto de Auxiliar de Agrimensura solicitaron el formulario para ser evaluados para la reclasificación. La Autoridad evaluó los formularios y ubicó a los Auxiliares de Agrimensura en el grupo ocupacional 8, escala de retribución 8. La Hermandad pidió a la Autoridad que reconsiderara y reclasificara a los Auxiliares de Agrimensura en una escala mayor. La Autoridad denegó la reconsideración, porque se presentó vencido el término provisto en el convenio colectivo.[7]

---

[6] Determinaciones de hecho 4 a 10.
[7] Determinaciones de hecho 11 a 16.

Al TPI también le quedaron claro los hechos a continuación. La Hermandad solicitó la designación de un árbitro conforme a los acuerdos suscritos en el convenio colectivo. El 14 de marzo de 2014, el Director de Recursos Humanos reconoció que se equivocó en la reasignación de clases y, por consiguiente, en el aumento concedido. El funcionario ordenó la corrección del aumento de $55.00 a $60.00 mensuales. El 17 de octubre de 2016, el Negociado de Arbitraje resolvió que la reasignación de puesto de los demandantes cumplió con el convenio.[8]

Por último, constan en la resolución recurrida los hechos a continuación. El puesto de Auxiliar de Agrimensura requiere un grado asociado en Tecnología de Ingeniería Civil con concentración en Agrimensura. A los demandantes se les exige una preparación académica superior a otros puestos, pero realizan igual o más trabajo que otros puestos. Los demandantes están en una escala de retribución inferior a la de otros auxiliares que no requieren cursos universitarios y se encuentran en una clasificación inferior.[9]

No obstante, el TPI determinó que existía controversia sobre los hechos siguientes:

1. Las razones por las que los Auxiliares de Agrimensura a quienes se les requiere una preparación académica superior en comparación con otros puestos y realizan igual o más trabajo que otros puestos, se encuentran en una escala de retribución menor a la de otros auxiliares a los cuales no se les requiere cursos universitarios y se encuentran en una clasificación inferior.

2. Si los títulos de puesto que llevan la designación de *auxiliar* tienen algún tipo de similitud o igualdad que les permita ser asignados a una misma clase de retribución.

3. Los criterios utilizados por la APPR y la HEO para excluir a los empleados del puesto de Auxiliar de Agrimensora de la Estipulación que buscaba paridad salarial entre los empleados de la HEO y la UDEM.

---

[8] Determinaciones de hecho 17 a19.
[9] Determinación de Hecho 21.

4. Si el Convenio Colectivo y su cláusula de renovación diaria discrimina contra los empleados del puesto de Auxiliar de Agrimensora.

El TPI no aplicó la doctrina de cosa juzgada, porque entre el laudo de arbitraje y este caso no existe identidad de cosas, causas y de litigantes. Tampoco aplicó el impedimento colateral por sentencia, debido a que el laudo no adjudicó ninguno de los hechos esenciales de este caso.

Según el TPI, la controversia ante el árbitro se limitó a determinar si la Autoridad incumplió con el procedimiento en la resignación de puestos de los querellantes. El TPI no albergó duda de que el árbitro no consideró ni atendió las alegaciones sobre la constitucionalidad de las escalas de retribución. Además, de que el árbitro no tenía jurisdicción para declarar inconstitucional una cláusula del convenio colectivo.

El foro recurrido determinó que la doctrina de justa representación no impide que los unionados impugnen un convenio colectivo arbitrario. No obstante, al TPI no le quedó claro, si la Hermandad incurrió en una negociación arbitraria como señalan los recurridos, ya que no consta porque los auxiliares de agrimensores fueron excluidos del aumento salarial negociado para lograr paridad salarial. La controversia sobre la constitucionalidad de las escalas de retribución obligó al TPI a denegar la moción de sentencia sumaria.

Por último, el TPI resolvió que no era el momento para atender el asunto de la prescripción, porque estaba íntimamente relacionado a la reclamación de igual paga por igual trabajo. El foro primario concluyó que para determinar la prescripción era necesario establecer si las escalas salariares eran discriminatorias.

La peticionaria presentó una moción en la que pidió determinaciones de hechos adicionales y reconsideración. El TPI denegó la solicitud.

Inconforme, la peticionaria presentó el recurso que nos ocupa en el que alega que:

*ERRÓ EL* HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO RECONOCER EN SU RESOLUCIÓN HECHOS MATERIALES INCONTROVERTIDOS O ACEPTADOS POR LA PARTE RECURRIDA, ALGUNOS DE ELLOS QUE TAMBIÉN HABÍAN SIDO SOSTENIDOS Y ESTABLECIDOS EN UNA RESOLUCIÓN DICTADA EN 2018 EN EL PRESENTE CASO.

*ERRÓ EL* HONORABLE TRIBUNAL DE PRIMERA INSTANCIA COMO CUESTIÓN DE DERECHO AL RECHAZAR DESESTIMAR LA DEMANDA Y NO APLICAR LA DOCTRINA DE COSA JUZGADA O IMPEDIMENTO COLATERAL POR SENTENCIA.

*ERRÓ EL* HONORABLE TRIBUNAL DE PRIMERA INSTANCIA COMO CUESTIÓN DE DERECHO Y ABUSO DE SU DISCRECIÓN AL DEJAR EN SUSPENSO UNA DETERMINACIÓN SOBRE PRESCRIPCIÓN CUANDO EXISTE UN IMPEDIMENTO PARA EJERCER AUTORIDAD PARA ENTENDER EN EL PRESENTE CASO.

*ERRÓ EL* HONORABLE TRIBUNAL DE PRIMERA INSTANCIA COMO CUESTIÓN DE DERECHO AL DECLINAR RESOLVER SI LA PARTE RECURRIDA ESTABA IMPEDIDA DE IMPUGNAR O CUESTIONAR EL CONVENIO COLECTIVO.

*ERRÓ EL* HONORABLE TRIBUNAL DE PRIMERA INSTANCIA COMO CUESTIÓN DE DERECHO AL NO DESESTIMAR LA CAUSA DE ACCIÓN, A PESAR DE QUE EL RECLAMO SOBRE IGUAL PAGA POR IGUAL TRABAJO RESULTA SER INMERITORIO, YA QUE LA PARTE RECURRIDA NO HA ESTABLECIDO QUE EL PUESTO DE AUXILIAR DE AGRIMENSOR LLEVA A CABO TAREAS Y FUNCIONES DE IGUAL NATURALEZA QUE LOS OTROS PUESTOS DE AUXILIARES CON QUIENES SE PRETENDE COMPARAR.

## II

### A.

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933 (32 LPRA sec. 3491), hoy conocido como Ley de Recursos Extraordinarios; *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de Leon Corp. v. American International Insurance Company of Puerto Rico*, 205 DPR 163, 174 (2020); *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710 (2019). Aunque la característica principal del recurso reside en el carácter discrecional del mismo, tal determinación no es irrestricta,

está sujeta a los criterios señalados en la Regla 52.1 de Procedimiento Civil. Advertimos que esta regla ha sufrido modificaciones a través del tiempo para expandir el marco discrecional que ostentan los foros revisores en la expedición del recurso.

En la actualidad, la Regla 52.1 de Procedimiento Civil específicamente dispone que el recurso de certiorari solamente será expedido:

> … para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

> Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. 32 LPRA Ap. V, R. 52.1.

Superado el análisis al amparo de la Regla 52.1 de Procedimiento Civil, *supra,* el foro apelativo deberá auscultar los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones para guiar su discreción al intervenir con la resolución u orden interlocutoria recurrida. La Regla 40 dispone:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ha de quedar claro que la denegatoria a expedir un recurso de certiorari no implica la ausencia de error en el dictamen, cuya revisión se solicitó, ni constituye una adjudicación en sus méritos. Sino que responde al ejercicio de la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

**B.**

La sentencia sumaria promueve una solución justa, rápida y económica para litigios de naturaleza civil en lo que no hay controversia genuina sobre hechos materiales que componen la causa de acción. *Acevedo Arocho v. Departamento de Hacienda de PR,* 2023 TSPR 80; *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece que la sentencia sumaria procede cuando las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, acreditan que no existe una controversia real y sustancial respecto a algún hecho esencial y material. *Íd.*, pág. 291.

El tribunal podrá dictar sentencia sumaria a favor del promovente, sin necesidad de celebrar un juicio, si no existe controversia de los hechos materiales que motivaron el pleito y únicamente resta aplicar el derecho a los no controvertidos. *González Meléndez v. Municipio Autónomo de San Juan,* 2023 TSPR 95*; Acevedo Arocho v. Departamento de Hacienda de PR,* supra; *Roldán Flores v. Soto*

*Lambert,* 199 DPR 664 (2018). La sentencia sumaria únicamente procede cuando el derecho aplicable lo justifica. La Regla 36.3 de Procedimiento Civil, *supra,* dispone los requisitos con los que debe cumplir una moción de sentencia sumaria. *Oriental Bank v. Perapi et al,* 192 DPR 7, 25 (2014).

La parte promovente de la moción de sentencia sumaria tiene que desglosar los hechos sobre los que alega no existe controversia. Además de especificar para cada uno la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. *Roldán Flores v. Soto Lambert,* supra, pág. 676; *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Mientras que, la parte que se opone a una moción de sentencia sumaria tiene que demostrar que existe controversia en cuanto a algún hecho material. Se considera un hecho material aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Roldán Flores v. Soto Lambert,* supra.

Cualquier duda no es suficiente para derrotar la procedencia de una moción de sentencia sumaria. La duda existente tiene que permitir concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Aunque toda inferencia de hechos incontrovertidos debe hacerse a favor del oponente, dicha parte no puede meramente cruzarse de brazos y descansar en sus alegaciones. Los tribunales podemos concluir que existe una controversia real y sustancial en cuanto a un hecho material, cuando el oponente presenta prueba que podría inducir a un juzgador racional a resolver a su favor. *Oriental Bank v. Perapi et al,* supra, pág. 26.

La sentencia sumaria tampoco procede, si existen alegaciones afirmativas en la demanda que no han sido refutadas y de los documentos que acompañan la moción de sentencia sumaria surge controversia sobre algún hecho material y esencial, o cuando como cuestión de derecho no procede el remedio sumario. *Oriental Bank v. Perapi et al,* supra, págs. 26, 27.

El tribunal apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. No obstante, al revisar la determinación del Tribunal de Primera Instancia, únicamente podrá considerar los documentos que se presentaron ante ese foro. Las partes no podrán traer en apelación evidencia que no fue presentada oportunamente ante el Tribunal de Primera Instancia, ni esbozar teorías nuevas o esgrimir asuntos nuevos. El tribunal apelativo únicamente puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales y si el derecho se aplicó correctamente. Sin embargo, no puede adjudicar hechos materiales en disputa porque esa tarea es del foro de primera instancia. *Meléndez González v. M. Cuevas*, 193 DPR 100, 114, 116 (2015).

### C.

El Tribunal Supremo de Puerto Rico adoptó la definición del tratadista español Manresa de la doctrina de cosa juzgada. Según Manresa, cosa juzgada es lo resuelto por fallo firme de un Juez o Tribunal competente que lleva en si la firmeza de la irrevocabilidad. La doctrina de cosa juzgada tiene los objetivos de poner fin a los litigios adjudicados de forma definitiva por los tribunales, garantizar la certidumbre y seguridad de los derechos declarados mediante una resolución judicial y evitar gastos adicionales al Estado y a los litigantes. Esta doctrina es valiosa y necesaria para la sana administración de la justicia. Por un lado, vela por el interés público de finalizar los pleitos. Por el otro, evita que los ciudadanos se sometan a las molestias de litigar dos veces una misma causa. Su aplicación no es inflexible y automática. La doctrina de cosa juzgada no aplica o derrota los fines de la justicia o consideraciones de orden público. La presunción de cosa juzgada únicamente tendrá efecto cuando existe la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron. *Presidential v. Transcaribe,* 186

DPR 263, 273-274 (2012) *Fonseca v. Hosp. Hima,* 184 DPR 281, 294 (2012).

La identidad de cosas ocurre cuando el segundo pleito se refiere al mismo asunto que el primero. La cosa es el objeto o materia sobre la cual se ejercita la acción. Su existencia se determina, si un juez está expuesto a contradecir una decisión anterior afirmando un derecho nacido o naciente. La identidad de causas es el origen de las acciones o excepciones planteadas y resueltas y el motivo que tuvo el demandante para pedir. Al determinar si existe identidad de causas de acción debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. Por último, la identidad de personas de los litigantes y la calidad en que lo fueron se extiende a quienes intervienen en el proceso a nombre y en interés propio. *Presidential v. Transcaribe,* supra*,* págs. 274-276; *A & P Gen. Contractors v. Asoc. Cana,* 110 DPR 753, 764-765 (1981).

El impedimento colateral por sentencia constituye una modalidad de la doctrina de cosa juzgada. Sin embargo, se distingue, porque la identidad de causas no es necesaria. La razón de pedir que se presente en una demanda no tiene que ser la misma que se presentó en la demanda anterior. La doctrina de impedimento colateral surte efectos cuando un hecho material para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. Tal determinación es concluyente en un segundo pleito, aunque envuelva causas de acción distintas. *Presidential v. Transcaribe,* supra*,* págs. 276-277; *PR Wine Prod. V. C. Crespo & Assoc.,* 175 DPR 139, 152-153 (2008).

### D.

La negociación colectiva es un elemento esencial para salvaguardar la paz industrial, garantizar los salarios adecuados y promover las condiciones seguras para los trabajadores. Por eso reconoce el derecho de los trabajadores a negociar colectivamente, a

través de los representantes de su selección. El derecho a mejorar las condiciones de empleo mediante la negociación colectiva es de rango constitucional. Art II, Sec. 17, Const. PR, LPRA, Tomo 1; *AAA v. UIA,* 199 DPR 638, 647, 648 (2018). El Tribunal Supremo de Puerto Rico explicó en *JRT v. UTLG,* 110 DPR 237, 243 (1980), que la doctrina de la justa representación obliga a las uniones a servir de buena fe y sin discrimen ni arbitrariedad a los intereses de sus miembros.

El Art. II, Sec. 16 de la Constitución de Puerto Rico, Const. PR, LPRA, Tomo 1, establece el derecho de todo trabajador a recibir igual paga por igual trabajo. Nuestra jurisdicción reconoce la existencia de una clara política pública en favor de que los trabajadores reciban un tratamiento equitativo y justo en la fijación de sus sueldos y demás formas de retribución. Dicha política pública está enmarcada en el precepto constitucional que garantiza la igual paga por igual trabajo. La extensión de los beneficios reconocidos a un empleado al amparo de un plan de clasificación y retribución se extienden a todos los otros empleados igualmente citados. Sin embargo, el principio constitucional de igual paga por igual trabajo, no es óbice para otorgar salarios distintos a personas en la misma escala salarial, siempre y cuando se justifique a base de factores como: (1) los años de servicio, (2) la demanda u oferta en el mercado de trabajo, (3) las habilidades y destrezas necesarias para realizar el trabajo y (4) el grado de complejidad de la tarea realizada entre otros factores. *Rivera Padilla et al v. OAT,* 189 DPR 315, 355-357 (2013)

**E.**

El Art II Sec. 16 de la Constitución de Puerto Rico consagra el derecho de todo trabajador a recibir igual paga por igual trabajo. Art II Sec. 16, Const PR, LPRA, Tomo I; *Rivera Padilla et al v. OAT,* supra. Nuestros constituyentes establecieron una clara política pública que reconoce el derecho de los trabajadores del servicio público a recibir un tratamiento equitativo y justo en la fijación de sus salarios y demás

formas de retribución. *Rivera Padilla et al v OAT,* supra; *Guzmán Rosario v Depto. de Hacienda,* 147 DPR 46, 52-53 (1998). El Tribunal Supremo de Puerto Rico ha reconocido un alto interés público a la legislación reguladora del empleo público y en especial a la que reglamenta la retribución salarial. *Íd.* El principio de igual paga por igual trabajo interesa evitar discrímenes de una parte e irritaciones de la otra, cuando la compensación diferente carece de justificación frente a la igualdad de la labor rendida. *Mercado Vega v. UPR,* 128 DPR 273 (1991) citando a Diario de Secciones de la Convención Constituyente, Tomo 4, pág. 2574 (1961).

La adopción del principio constitucional de igual paga por igual trabajo, nació de la necesidad de hacer justicia a la mujer obrera a la que frecuentemente se le pagaba menos que a los hombres, a pesar de rendir la misma o mayor labor. Sin embargo, la justicia salarial a la mujer trabajadora no es la única motivación que existe detrás de la adopción de la garantía constitucional de igual paga por igual trabajo. Nuestra jurisprudencia ha reconocido que el derecho de igual paga por igual trabajo también puede ser invocado en reclamaciones relacionadas con los planes de clasificación y retribución. El Tribunal Supremo de Puerto Rico ha sido preciso en reconocer que los principios de equidad y justicia en la fijación de los salarios de los empleados públicos constituyen una aplicación práctica del derecho constitucional a recibir igual paga por igual trabajo. *Rivera Padilla et al v. OAT,* supra, pág. 356.

No obstante, la protección constitucional de igual paga por igual trabajo no impide que dos personas que realicen una misma labor tengan salarios distintos. *Rivera Padilla et al v. OAT,* supra, pág. 357; *Aulet Lebrón v. Depto. Servicios Sociales,* 129 DPR 1 (1991). El principio de igual paga por igual trabajo no es óbice para la otorgación de salarios distintos a personas clasificadas en la misma escala salarial. Sin embargo, tiene que existir una justificación objetiva que excuse la

diferencia de compensación ante la igualdad de la labor rendida. *Rivera Padilla et al v. OAT,* supra, pág. 357. No es el capricho o arbitrariedad quien demarca los límites. *Aulet Lebrón v. Depto. de Servicios Sociales,* supra, pág. 44. A modo de ejemplo, la diferencia puede fundarse en los factores siguientes: los años de servicio prestado, la demanda u oferta en el mercado de trabajo, las habilidades y destrezas necesarias para realizar el trabajo y el grado de complejidad de la tarea realizada, entre otros factores. *Rivera Padilla et al v. OAT,* supra, pág. 357; *Aulet Lebrón v. Departamento de Servicios Sociales,* supra, pág. 44; *Mercado Vega v UPR,* supra.

**F.**

El término prescriptivo de las acciones por daños y perjuicios comienza desde que el agraviado tuvo o debió tener conocimiento del daño sufrido y estuvo en posición de ejercer su causa de acción. El tipo del daño reclamado es esencial para determinar cuando comienza a transcurrir el término prescriptivo y en el momento en que finaliza. *Rivera Ruiz et al v. Mun. de Ponce,* 196 DPR 410, 416 (2016).

En nuestro ordenamiento jurídico se han reconocido varios tipos de daños, como los continuados y los sucesivos. Los daños continuados son producidos por uno o más actos culposos negligentes que pueden ser coetáneos o no. No obstante, se caracterizan por sus consecuencias lesivas, ininterrumpidas, sostenidas, duraderas y sin interrupción, unidas entre sí. El carácter continuado e ininterrumpido de sus efectos, convierte los daños continuos en previsibles. Los daños continuos están compuestos de elementos de daños actuales que ya han acontecido y de daños futuros que son previsibles y ciertos. El término prescriptivo para presentar una reclamación comienza cuando ocurra lo que sea posterior entre los últimos actos u omisiones o el resultado definitivo. *Rivera Ruiz et al v. Mun. de Ponce,* 196 DPR 410, 417, 426 (2016).

El Tribunal Supremo de Puerto Rico resolvió expresamente en *JRT v AEE,* 113 DPR 564, 566-567 (1982), que las reclamaciones de aumento salarial contra un patrono por años de servicio son de carácter continuo. A partir de esta decisión quedó claro que, cada vez que el patrono paga el salario sin incluir el aumento por años de servicio, surge nuevamente la causa de acción. Posteriormente, el tribunal explicó en *UGT v. Corp Difusión Pub.,* 168 DPR 654, 691 (2006), que una violación de carácter continuo hace que el agravio surja o se renueve periódicamente. La querella se puede presentar en cualquier momento mientras la violación persista. Para establecer si la reclamación es de naturaleza continua, no es determinante la continuidad del agravio. El factor determinante es si, al momento de presentar la querella, la violación persiste. La pregunta que debemos hacernos es como podemos distinguir satisfactoriamente entre violaciones que constituyen nuevos agravios y las que son meras manifestaciones de la violación original. Únicamente las primeras configuran una verdadera violación continua con su evidente efecto interruptor.

Tan reciente como en *Acevedo Arocho vs Departamento de Hacienda,* 2023 TSPR 82, el Tribunal Supremo de Puerto Rico resolvió que el término prescriptivo de las reclamaciones de salarios de los empleados públicos es de tres años. El término se computa desde que el empleado deja de trabajar o interrumpe sus servicios en un período de tiempo sin implicación o cuando ocurre una novación del contrato de empleo. Sin embargo, no cabe hablar de prescripción si el empleado público se encontraba trabajando cuando presentó su reclamación.

**III**

La Regla 52.1, *supra,* nos autoriza a expedir este recurso, debido a que la peticionaria solicita revisión de la denegatoria del TPI a una moción de carácter dispositivo. La controversia amerita nuestra intervención porque es de alto interés público. El derecho de los

trabajadores a mejorar sus condiciones de salario, a través de la negociación colectiva, incluyendo su salario, es de rango constitucional. Nuestra jurisdicción reconoce la existencia de una clara política pública en favor de que los trabajadores reciban un tratamiento equitativo y justo en la fijación de sus sueldos.

La etapa en la que están los procedimientos es la más propicia para evitar dilaciones innecesarias en un pleito que inició el 27 de abril de 2017, hace ya más de 6 años y 4 meses. La peticionaria ha solicitado en varias ocasiones la desestimación sumaria de la demanda. Incluso ha acudido a este tribunal. Sin embargo, todas las veces en las que ha solicitado el remedio sumario a su favor le ha sido negada.

La controversia se circunscribe a determinar si el laudo de arbitraje convierte en cosa juzgada el reclamo de la demandante o constituye un impedimento colateral.

La expedición del recurso es necesaria para que la peticionaria entienda que las doctrinas invocadas no aplican, porque el laudo de arbitraje no atendió ni resolvió la misma controversia de este caso. Además, de que tampoco adjudicó un hecho esencial de la controversia aquí planteada.

Al árbitro le correspondió atender y resolver si la Autoridad incumplió con el procedimiento para la reasignación de puestos establecido en los Artículos XII y XIII del Convenio Colectivo. Aquí la controversia es distinta, porque los recurridos cuestionan la constitucionalidad de las escalas de retribución y clasificación establecidas en el Artículo XX del convenio.[10]

Los demandantes alegan que la Hermandad falló a su deber de representación. Sostienen que la Hermandad negoció un convenio que discrimina contra los auxiliares de agrimensores, porque les ubica en una escala salarial inferior a la de otros empleados con funciones de

---

[10] Página 913 en adelante.

menor relevancia y a los que no se les requiere preparación académica ni una licencia. Los demandantes imputan negligencia a la Autoridad por no corregir la disparidad salarial y quebrantar el derecho constitucional de igual paga por igual trabajo.

La doctrina de cosa juzgada y su modalidad de impedimento colateral son inaplicables a este caso, porque el árbitro no tiene autoridad para atender reclamaciones de índole constitucional. El derecho de un trabajador unionado a impugnar las acciones arbitrarias y discriminatorias de la unión que lo representa es incuestionable.

Por otro lado, resolvemos que la demanda contra la Autoridad no prescribió. Nuestra determinación no es incompatible con lo decidido en el KLAN201900511. Allí aplicamos la norma establecida en *JRT v AEE,* supra, de que las reclamaciones contra el patrono por salarios dejados de percibir son de carácter continuo. Por consiguiente, la reclamación puede ser presentada, mientras la supuesta violación persista. La causa de acción de los demandantes surge nuevamente, cada vez que la Autoridad le paga el salario con la alegada disparidad salarial. La reclamación contra la Autoridad no está prescrita, debido a que los daños alegados se configuran cada vez que los demandantes cobran su salario. Además, en *Acevedo Arocho v Departamento de Hacienda*, supra, se resolvió que la prescripción no aplica cuando el empleado público presenta la demanda, mientras continua en el empleo.

Por último, la Autoridad alega que el TPI erró al no desestimar la reclamación de igual paga por igual trabajo. La Autoridad aduce que los recurridos no establecieron el elemento esencial de esa causa de acción, porque no demostró que los otros puestos auxiliares realizan tareas y funciones de igual naturaleza que los auxiliares de agrimensura. El patrono argumenta que los puestos que los demandantes alegan que son similares a los de auxiliares de agrimensura tienen deberes, responsabilidades y requisitos distintos.

Según la Autoridad, el que compartan el término auxiliar no significa que tengan la misma clasificación ocupacional. La peticionaria sostiene que la protección de igual paga por igual trabajo se activa únicamente cuando el trabajador recibe un salario injusto, comparado con otros que realizan funciones de igual naturaleza.

La Autoridad invocó la facultad que le confiere la ley para establecer el plan de clasificación y determinar los puestos que necesita para realizar la misión de la agencia y cuáles son las funciones por realizar y los requisitos que debe tener el incumbente en un puesto en específico.

El TPI determinó que no podía resolver sumariamente la reclamación de igual paga por igual trabajo, porque primero tenía que establecer si las escalas salariales discriminaban contra los demandantes.

En el KLAN201900511 se concluyó que no existe una causa de acción por violación al principio constitucional de igual paga por igual trabajo, cuando el salario se acordó en un convenio colectivo y no se planteó discrimen por sexo o cuando existe alguna de las razones en las que se justifica la disparidad salarial.

Sin embargo, hoy modificamos esa postura, debido a que los recurridos cuestionan la disparidad salarial establecida en el plan de clasificación y retribución que adoptó la Autoridad y el derecho de igual paga por igual trabajo también puede ser invocado en ese tipo de reclamaciones. No obstante, la controversia no puede ser adjudicada sumariamente, debido a que los hechos esenciales no están claros. La controversia amerita determinar si las clasificaciones y escalas son discriminatorias.

Al igual que el foro primario, concluimos que existe controversia sobre las razones por las que los Auxiliares de Agrimensores reciben un salario menor al de otros empleados que están en una clasificación inferior y que realizan funciones iguales o menos complejas o

importantes y a los que no se les requiere el mismo nivel de estudio, ni tener una licencia para poder ejercer el trabajo. Igual controversia existe sobre las razones por las que otros empleados en su misma clasificación tienen un mayor salario. Estas controversias ameritan ser dilucidadas en un juicio plenario.

**IV**

Por lo antes expuesto, se expide el recurso y se confirma la resolución recurrida en la que el TPI se negó a desestimar sumariamente la demanda.

Examinadas y atendidas la *Solicitud de auxilio de jurisdicción* presentada por la Autoridad de los Puertos el 24 de octubre de 2023, así como la *Oposición a petición de certiorari y moción en auxilio de jurisdicción* presentada por la recurrida el 26 de octubre de 2023*,* no ha lugar a la solicitud de auxilio.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Rodríguez Flores disiente, con la siguiente expresión:

Muy respetuosamente, entiendo que no procede una causa de acción al palio constitucional de *igual paga por igual trabajo*, contra la Autoridad de Los Puertos y mucho menos una causa de acción por daños y perjuicios. Por otro lado, estoy conteste con lo resuelto en *Castro García y otros vs Autoridad de los Puertos,* KLAN201900511, Sentencia del 28 de junio de 2019.

**Notifíquese inmediatamente.**

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones